United States District Court
Southern District of Texas
**ENTERED**
September 17, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| O.W., | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 4:25-cv-01609 |
| v. | § | |
| Frank Bisignano, Commissioner of Social Security, | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

This appeal from an administrative ruling denying social security benefits was transferred to the undersigned judge upon the parties' consent. Dkt. 4. After carefully considering the parties' briefs, Dkt. 10, 11, 12, the record, Dkt. 7, and the applicable law, the Court grants Plaintiff's motion for summary judgment (Dkt. 10), denies the Commissioner of Social Security's cross-motion for summary judgment (Dkt. 11), reverses the Commissioner's decision, and remands this case for further proceedings.

## Background

Plaintiff filed for disability insurance benefits and supplemental security income on March 7, 2022, listing that same date as the date she became disabled. *See* R.19, 319-320. Plaintiff listed her alleged impartments as

epilepsy, sciatica, bone deterioration in her back, nerve damage, bipolar disorder, schizophrenia, and cancer. R.95.

Plaintiff's application was denied initially, R.133-36, and upon reconsideration, R.145-47. She sought and received a hearing before an administrative law judge ("ALJ"). R.152-53 (request for hearing), 196 (notice of hearing), 232 (amended notice), 261 (amended notice). After the hearing, the ALJ issued a decision finding that Plaintiff is not disabled. R.19-38.

The ALJ applied the five-step sequential evaluation process to determine whether Plaintiff was disabled under 20 C.F.R. § 416.920(a). R.19-38. The ALJ first concluded that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of March 7, 2022. R.22. At step two, the ALJ found that Plaintiff had the following severe impairments: morbid obesity, hypothyroidism, seizure disorder, degenerative disc disease, degenerative joint disease, obesity, polysubstance abuse, bipolar disorder, depressive disorder, anxiety disorder, and post traumatic stress disorder. R.22-23.

At step three, the ALJ determined that Plaintiff's substance use and her impairments met the criteria of section 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1. R.23-25. The ALJ then found that Plaintiff's "medically determinable impairments could reasonably be expected to produce disabling symptoms when considering her substance use." R.24

The ALJ found that if Plaintiff could stop her substance use, "the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities" and Plaintiff would "still have a severe impairment or combination of impairments" as discussed in 20 C.F.R. 416.920(c). R.25-27. Based on Plaintiff's medical records, various medical opinions, and Plaintiff's testimony about her conditions, the ALJ determined that if Plaintiff could stop her substance use, she has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a) with additional limitations. R.28-36.

At step four, the ALJ determined that Plaintiff has no past relevant work experience, and accordingly, transferability of job skills was not at issue. R.37. And the ALJ determined at step five that Plaintiff could perform other work that exists in significant numbers in the national economy and thus was not disabled. R.37-38. Specifically, the ALJ found that based on the vocational expert's ("VE") testimony at the hearing, Plaintiff "would be able to perform the requirements of representative occupations" like a final assembler (5,000 jobs), table worker (3,077 jobs), and toy stuffer (4,100 jobs). R.37-38.

Plaintiff appealed the decision to the Appeals Council. R.11-12. Plaintiff submitted a rebuttal report from a vocational expert, Karen Starr (the "Starr Report"), to the Appeals Council. R.13-15. In the report, the expert disputed two of three proposed job occupations for Plaintiff, asserting there "are none or

virtually none of these jobs at all in light of the limitations set forth in the [ALJ's] hypothetical." R.15.

The Appeals Council declined to review the ALJ's decision. R.2-5. The Appeals Council acknowledged the Starr Report but refused to exhibit it, finding that the report "does not show a reasonable probability that it would change the outcome of the decision." R.3. Plaintiff then filed an appeal to this Court under 42 U.S.C. §§ 405(g). Dkt. 1.

## Legal Standard

This Court reviews the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (quotation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam) (quotation omitted).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the

courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotation omitted). The Court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

**Analysis**

As her sole contention, Plaintiff complains that the Appeals Council failed to consider the Starr Report that contradicts the VE's testimony. Dkt. 10 at 8-15. She alleges that the report undermines confidence in the outcome because it refutes the VE's testimony about two of the three jobs that the ALJ found Plaintiff capable of performing and eliminates most of the positions available to someone with Plaintiff's RFC. *See id.* at 11. The Commissioner, on the other hand, contends that Plaintiff failed to show both good cause for belatedly submitting the Starr Report and a reasonable probability that the report, if considered, would change the result. Dkt. 11 at 8.

The Appeals Council declined to publish the Starr Report only because it deemed the report non-material, and not by suggesting Plaintiff lacked good cause to submit it. And as concluded below, the Starr Report is material evidence that carries a reasonable possibility of altering the ALJ's conclusion that Plaintiff is not disabled. Remand is warranted.

### A. Legal framework for Appeals Council's consideration of new evidence.

"When a claimant submits new evidence to the Appeals Council, the Council must consider the evidence if it is new and material and if it relates to the period on or before the ALJ's decision." *Hardman v. Colvin*, 820 F.3d 142, 150 (5th Cir. 2016) (quotation and citation omitted); 20 C.F.R. § 404.970(a)(5). In addition, the claimant must show "good cause" for not submitting the evidence previously. 20 C.F.R. § 416.1470 ("[T]he Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence….").

The foregoing requirements are similar to the standards governing consideration of additional evidence by the district court under 28 U.S.C. § 405(g). *See Thomas v. Colvin*, 587 F. App'x 162, 165 (5th Cir. 2014) (per curiam) (making this observation). In that context, evidence is "new" if it did not exist at the time of the earlier proceeding. *See Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). Evidence is "material" if it (1) "relates to the time period for which the disability benefits were denied" and (2) has a "reasonable probability" of changing the outcome of the Commissioner's decision. *See Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

As for good cause, the claimant must show "a legitimate reason why this evidence was not produced earlier." *See Schuler v. Saul*, 805 F. App'x 304, 305-

06 (5th Cir. 2020) (per curiam) (addressing district court's consideration of new evidence under 42 U.S.C. § 504(g), citing *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995)). "The mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) (citing *Bradley v. Bowen*, 809 F.2d 1054, 10058 (5th Cir. 1987)).

### B. The Appeals Council did not rely on lack of good cause as a basis for rejecting the Starr Report.

The Commissioner argues that Plaintiff failed to demonstrate good cause for not submitting the Starr Report to the ALJ before the hearing. Dkt. 11 at 8. Based on that omission, the Commissioner claims that the Appeals Council did not err. *Id.* Plaintiff acknowledges the good cause requirement but emphasizes that the Appeals Council did not find a lack of good cause as a reason for denying review. Dkt.12 at 2.

The Appeals Council is not required to discuss new evidence or to give reasons for denying review. *Whitehead*, 820 F.3d at 780; *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) ("The regulations do not require the AC to provide a discussion of the newly submitted evidence or give reasons for denying review"). But if the Appeals Council *does* state its reasons, this Court cannot ignore them. Rather, this Court can only affirm the Commissioner's decision on the grounds stated in the decision. *See Cole v. Barnhart*, 288 F.3d 149, 151

(5th Cir. 2002) ("It is well-established that [the court] may only affirm the Commissioner's decision on the grounds which he stated for doing so.").

Although the Appeals Council's notice mentions the good cause requirement when reciting background rules, the Appeals Council limited its stated reasons for rejecting the Starr Report to non-materiality, *i.e.*, the lack of a "reasonable probability that it would change the outcome of the decision." R.3. Because judicial review is limited to the Appeals Council's stated rationale, this Court declines to consider the good cause requirement on which the Appeals Council did not rely. *Cf. Prudhomme v. Colvin,* 605 F. App'x 250, 254 (5th Cir. 2015) (per curiam) (rejecting Commissioner's contention that the claimant would not be disabled if restricted to unskilled work, including because the ALJ had not "explicitly relied on the availability" of an unskilled job when concluding that Plaintiff could perform work available in the economy); *Torrez v. Kijakazi*, 2022 WL 3162353, at *8 n.3 (S.D. Tex. July 8, 2022) (rejecting Commissioner's good cause argument where Appeals Council did not consider it as a ground for rejecting new evidence), *adopted by* 2022 WL 3156226 (S.D. Tex. Aug. 8, 2022).

**C. The Starr Report is material evidence that would reasonably change the ALJ's determination.**

The parties also dispute whether the Starr Report is material evidence that could have changed the outcome. The Court concludes that it is.

At step five of the disability analysis, the Commissioner has the burden to show there are jobs that exist in significant numbers in the national economy that Plaintiff can perform despite her limitations. 20 C.F.R. § 404.1566(a); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) ("The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy."). The ALJ may rely on the Grid Rules or a vocational expert's testimony to make that determination. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

In this case, the VE testified that there were three jobs that someone with Plaintiff's limitations could perform: final assembler, table worker, and toy stuffer. R.88-89. The expert also quantified the numbers of those jobs nationwide: 5,000 for final assembler, 3,077 for table worker, and 4,100 for toy stuffer. *Id*. The ALJ adopted the VE's testimony when concluding there were significant numbers of jobs available to Plaintiff. *See* R.37-38.

But the Starr Report rebuts the VE's testimony about two of those three jobs.[1] According to the report, the table worker occupation has become obsolete

[1] The report's author, Karen Starr, is an Accredited Disability Representative. R.13. Starr based her opinions on her experiences and "upon the current information about how jobs are performed that is collected by the United States Department of Labor/Bureau of Labor Statistics, in particular the Occupational Requirements Survey (ORS), the O*NET, and of course the DOT." R.13.

because asbestos felt has not been mass produced since the 1990s. R.14. And even assuming any table worker jobs exist, the report opines that more than 2/3 of them could not be performed by someone like Plaintiff, who is limited to sedentary work. *See id.* That left "*far* less than 1000" positions, if any. *See id.*

The Starr report also indicates that the toy stuffer job exceeds Plaintiff's physical limitations. According to the report, 70% of those positions are not sedentary because they require continuous or nearly continuous standing or walking. *See* R.15. The expert also opined that this type of job is "no longer considered unskilled." R.15. She concluded that "there are none or virtually none of these [toy stuffer] jobs at all in light of the limitations set forth in the hypothetical" posited to the VE. *Id.*

As the Commissioner observes, the Starr Report does not address the third occupation—final assembler—that the VE addressed and that the ALJ concluded that Plaintiff could also perform.[2] *See* Dkt. 11 at 9-10. The Commissioner suggests that the availability of work as a final assembler means that the Starr Report would not alter the conclusion at step five that there is work that Plaintiff can perform. *See id.* Plaintiff, however, maintains

[2] The report addressed a third occupation: an eyeglass frame polisher. *See* R.13. As Plaintiff concedes, that occupation is irrelevant because it was not one of the jobs that the ALJ found Plaintiff capable of performing. *See* Dkt. 10 at 8; R.37-38.

that the Starr Report's potential elimination of all but a few positions confirms its materiality to the determination. Dkt. 10 at 13. Plaintiff is correct.

The Starr Report's potential negation of two of the three jobs proposed by the VE would eliminate most of the positions available to Plaintiff. While "[t]he Fifth Circuit has not established a bright-line rule regarding what constitutes a 'significant number' of jobs for purposes of step five of the sequential analysis," *Lawrence T. v. Kijakazi*, 2023 WL 5808374, at *4 (S.D. Tex. Sept. 6, 2023), the Fifth Circuit has classified around 50,000 jobs as significant. *See Lirley v. Barnhart*, 124 F. App'x 283, 284 (5th Cir. 2005) (per curiam); *see also Dominguez v. Astrue*, 286 F. App'x 182, 188 (5th Cir. 2008) (per curiam) (concluding 8,000 assembler jobs in Texas and 270,000 assembler jobs nationwide are significant numbers). Because of the lack of binding authority here, some district courts evaluating the significance of the job numbers have borrowed the Sixth Circuit's multi-factor test, which examines "the level of claimant's disability; the reliability of the [VE]'s testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *See Gretta H. v. Kijakazi*, 2022 WL 18107079, at *4 (N.D. Tex. Dec. 30, 2022) (quoting *Hall v. Bowen*, 837 F.2d 272, 75 (6th Cir. 1988) and collecting decisions that have applied *Hall*'s test).

As the ALJ's opinion reflects, removing toy stuffer and table worker jobs from the equation would reduce the total number of jobs available to Plaintiff in the national economy by nearly 60%—i.e., from 12,177 for all three positions, combined, to only 5,000 final assembler positions. *See* R.37-38. Such a drastic reduction raises reasons to doubt the VE's overall testimony. And for the remaining final assembler jobs, the record does not indicate how many of those positions are within Plaintiff's geographic reach. *See, e.g.*, *Gretta H.*, 2022 WL 18107079, at *3, 5 (making similar observation when finding no substantial evidence supported the ALJ's step-five conclusion that the number of available jobs was sufficient). The Starr Report is new and material evidence because it significantly undermines the "reliability of the VE's testimony" about the quantum of jobs that Plaintiff could perform. *See Al Nuaimi v. Bisignano*, 2025 WL 5074486, at *4 (W.D. Tex. Nov. 7, 2025); *see also, e.g.*, *P. v. Bisignano*, 2026 WL 539182, at *7 (D. Minn. Feb. 26, 2026) (report was new and material because it contradicted vocational expert's testimony about the availability of jobs for Plaintiff, thus undermining the ALJ's decision).

For related reasons, this Court cannot conclude that substantial evidence supports the ALJ's denial of benefits, as necessary to affirm the Appeals Council's refusal to consider the Starr Report. *See Hardman*, 820 F.3d at 151. Apart from the VE's testimony, which the Starr Report calls into question, no other evidence supports the ALJ's finding at step five that there

are enough positions available that Plaintiff can perform. *See* R.38 (ALJ's exclusive reliance on VE's testimony). Yet the ALJ did not have the opportunity to evaluate the Starr Report, resolve its conflicts with the VE's opinions, and determine whether there would still be a significant number of jobs for Plaintiff—including if the Starr Report renders most of them unavailable. Those determinations are for the ALJ to make. Because there is a reasonable possibility that the Starr Report would lead the ALJ to reconsider his conclusion, remand is merited. *See, e.g.*, *Bond v. Colvin*, 2015 WL 3658583, at *8 (S.D. Tex. June 12, 2015) (remanding for consideration of new medical opinions that "would have affected the ALJ's perspective on the evidence").

**Conclusion**

For the foregoing reasons, it is **ORDERED** that Plaintiff's motion for summary judgment (Dkt. 10) be **GRANTED**, and the Commissioner's cross-motion for summary judgment (Dkt. 11) be **DENIED**. It is further **ORDERED** that the Commissioner's decision is **VACATED** and this case is **REMANDED** for a new step five determination that considers the Starr Report along with a new hearing, if necessary.

Signed on September 17, 2026, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge